United States District Court
Southern District of Texas
**ENTERED**
April 21, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

REGINALD ANOKWURU,                §
                                  §
        Plaintiff,                §
                                  §
v                                 §        CIVIL ACTION NO. H-19-2209
                                  §
CITY OF HOUSTON, et al.,          §
                                  §
        Defendants.               §

## MEMORANDUM AND RECOMMENDATION

Pending before the court is Houston Police Department ("HPD") and City of Houston's ("Houston") Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 21) and Plaintiff's Third Motion for Leave to Amend the Complaint (Doc. 30). The court has reviewed the motions, the responses, and all related briefing. As explained below, the court **GRANTS** Plaintiff's motion for leave to amend and **GRANTS** the motion to dismiss all claims.

## I.  Case Background

Plaintiff filed this civil rights action based on an allegedly unfounded arrest for the offense of aggravated sexual assault.[1]

### A.  Plaintiff's Allegations

In June 2017, the victim of a gang rape by three black men reported the crime to HPD.[2] HPD Officer B. Orellana answered the

---

[1]     See Doc. 1, Pl.'s Orig. Compl.

[2]     See Doc. 30-1, Attach. 1 to Pl.'s 3rd Mot. for Leave to Am., Pl.'s 3rd Am. Compl. pp. 4, 8.

call and interviewed the complainant at a hospital.[3]  Several days later, HPD Officer M. R. Francis ("Officer Francis") conducted a formal interview with the complainant at HPD headquarters.[4]  At that time, the complainant identified the three suspects as Jay, Idris, and CheChe.[5]  She recounted that she was engaged in consensual conduct with Idris when the other two men entered the room and raped her while Idris watched.[6]

About a month after the interview of the complainant, Officer Francis received a statement from Adeolu Thompson-John ("Thompson-John"), whom Plaintiff presumed to be the suspect known as Jay.[7]  Thompson-John reported that Idris and an individual named Chidera were engaged in consensual sex with Plaintiff when Thompson-John "joined in the encounter."[8]  This information led Officer Francis to Plaintiff, who is known as Chidera Reginald Anokwuru.[9]

In late July 2017, Officer Francis contacted Plaintiff, asking for information about Jay and Idris and "accus[ing] him, underhandedly, of raping the complainant."[10]  Officer Francis

---

[3]    See id. p. 5.

[4]    See id.

[5]    See id.

[6]    See id. pp. 5-6.

[7]    See id. p. 6.

[8]    Id.

[9]    See id.

[10]   Id.

2

demanded that Plaintiff go into the police station for an interview.[11] Plaintiff asked Officer Francis "why and who these people [were]."[12] Officer Francis became upset with Plaintiff and "berat[ed] [Plaintiff] to come in for an interview."[13]

No assailant could be verified through the DNA results of the sexual assault kit.[14]

> The [district attorney's] office subsequently told
> Officer M. R. Francis to contact the complainant again
> to clear up the story and she [did] just that. The
> complainant provided a similar account on August 9,
> 2017[,] to Officer M. R. Francis[] but still refer[red]
> to the suspects as Jay, Idris, and CheChe. [The
> complainant] never told Officer M. R. Francis that CheChe
> [was] Chidera[,] and the officer [did] not indicate in
> her report that she show[ed] the complainant a lineup to
> verify the identities of any of the alleged suspects.
> Officer M. R. Francis assume[d] that CheChe [was]
> [Plaintiff] and [did] not use any police investigative
> techniques to verify that identification including
> lineups, showups, or simple investigative techniques like
> asking questions.[15]

Acting "on nothing more than unattributed hearsay from the mouth of a suspect and on false information never verified with the complainant," Officer Francis obtained a warrant for Plaintiff's arrest.[16]

HPD officers arrested Plaintiff in mid-October 2017 for the

---

[11]    Id. pp. 6-7.

[12]    Id. p. 7.

[13]    Id.

[14]    See id.

[15]    Id.

[16]    Id. pp. 7-8.

offense of aggravated sexual assault.[17]  "In fact, Plaintiff was innocent of the offense charged."[18]  Sometime thereafter, a grand jury indicted Plaintiff.[19]  After the indictment, the district attorney's staff asked the complainant to view photographs of Plaintiff.[20]  She denied that Plaintiff was one of her assailants, and the case against Plaintiff was dismissed.[21]  The dismissal stated, "No probable cause exists at this time to believe the defendant committed the offense . . . wrong defendant filed on per Complainant.  Correct Defendant to be filed on."[22]

**B.  <u>Procedural Background</u>**

On June 19, 2019, Plaintiff filed the original complaint in this case against HPD and Houston, alleging false arrest and malicious prosecution under both 42 U.S.C. § 1983 ("Section 1983") and state law.[23]  Without identifying by name any involved officer, Plaintiff alleged that Plaintiff had been wrongfully arrested based on the similarity of his name to "the real suspect" and on the failure of HPD to use a lineup for identification.[24]  The only

---

[17]     <u>Id.</u> p. 8.

[18]     <u>Id.</u>

[19]     <u>See</u> <u>id.</u> p. 9.

[20]     <u>See</u> <u>id.</u>

[21]     <u>See</u> <u>id.</u>

[22]     <u>Id.</u>

[23]     <u>See</u> Doc. 1, Pl.'s Orig. Compl.

[24]     <u>Id.</u> p. 3; <u>see also</u> <u>id.</u> p. 4.

4

municipal policy identified by Plaintiff was "refrain[ing] from using a simple lineup or any other identification procedure before arresting . . . Plaintiff[.]"[25]  Plaintiff sought one million dollars in actual damages and ten million dollars in punitive damages.[26]

On July 11, 2019, HPD and Houston filed a motion to dismiss, arguing that dismissal of the suit was warranted because: (1) HPD was not a proper party; (2) Houston was entitled to governmental immunity for the state-law tort claims; (3) Plaintiff failed to provide timely notice of the state-law tort claims; and (4) Plaintiff failed to allege any constitutional violation or any municipal policy or custom in support of his Section 1983 claim.[27] Plaintiff filed a motion for extension of time to respond, which the court granted.[28]

On August 14, 2019, one day before the extended due date for Plaintiff's response, Plaintiff filed a motion for leave to amend his original complaint, stating that he wished to amend in order to provide more factual specificity and to name as defendants four HPD

---

[25]    Id. p. 7.

[26]    See id. p. 8.

[27]    See Doc. 6, HPD & Houston's Mot. to Dismiss Pl.'s Orig. Mot. to Dismiss.

[28]    See Doc. 8, Pl.'s Unopposed Mot. for Extension of Time to File Resp. to HPD & Houston's Mot. to Dismiss; Doc. 11, Ord. Dated July 24, 2019.

officers as well as policymakers of HPD and Houston.[29]  Plaintiff did not attach a proposed complaint.[30]   The court granted Plaintiff's motion for leave to amend on September 19, 2019, allowing Plaintiff until September 30, 2019, to file the amendment.[31]

Prior to the issuance of the court's order granting leave to amend, Plaintiff timely filed a response to HPD and Houston's motion to dismiss.[32]   Therein, Plaintiff offered a convoluted argument in response to the claim of governmental immunity from the state-law torts, arguing that HPD and Houston were not immune to claims raised under Section 1983.[33]  Plaintiff did not address the arguments that HPD was not a proper party and that Plaintiff had not provided notice of the state-law tort claims.[34]

In the amended complaint filed on September 30, 2019, Plaintiff added facts concerning the rape for which he had been arrested and allegations related to policies and policymakers.[35] But, in contravention to his stated reasons for seeking leave to

---

[29]    See Doc. 12, Pl.'s Mot. for Leave to Am. Pl.'s Orig. Compl.; Doc. 13, Pl.'s Am. Mot. for Leave to Am. Pl.'s Orig. Compl.

[30]    See Doc. 12, Pl.'s Mot. for Leave to Am. Pl.'s Orig. Compl.; Doc. 13, Pl.'s Am. Mot. for Leave to Am. Pl.'s Orig. Compl.

[31]    See Doc. 17, Ord. Dated Sept. 19, 2019.

[32]    See Doc. 14, Pl.'s Resp. in Opp. to HPD & Houston's Mot. to Dismiss.

[33]    See id. pp. 8-10.

[34]    See id. pp. 8-21.

[35]    See Doc. 19, Pl.'s 1st Am. Compl. pp. 3-4.

amend, Plaintiff named no new defendants in addition to HPD and Houston, mentioned no officers by name, and merely alleged that HPD Chief of Police Art Acevedo ("Chief Acevedo") and Houston Mayor Sylvester Turner ("Mayor Turner") were policymakers without attributing any policymaking actions to them.[36]  Plaintiff dropped the state-law tort claims but maintained the Section 1983 claims that his constitutional rights to be free of false arrest and malicious prosecution had been violated.[37]  For the Section 1983 claim, Plaintiff added the allegation that Houston had a municipal policy of "failing to train, supervise, and discipline its employees[.]"[38]

Plaintiff's filing of the first amended complaint prompted HPD and Houston to file a timely second motion to dismiss.[39]  They reiterated their arguments that HPD was not a proper party and that Plaintiff failed to allege any constitutional violation or any municipal policy or custom in support of his Section 1983 claim.[40] Additionally, they challenged Plaintiff's policy allegation of failure to train and his mention that Houston had ratified the

---

[36]      See id. pp. 1-6.

[37]      See id. pp. 6-8.

[38]      Id. p. 7.

[39]      See Doc. 21, HPD & Houston's Mot. to Dismiss Pl.'s 1st Am. Complaint. HPD and Houston's first motion to dismiss eventually was mooted by the court based on the court's granting Plaintiff leave to amend his original complaint. See Docket Entry Dated Jan. 8, 2020.

[40]      See id. pp. 4-11.

officers' actions.[41]

At a scheduling conference on October 17, 2019, a few days after the filing of HPD and Houston's second motion to dismiss, Plaintiff orally moved to amend the complaint again, stating that he no longer wished to pursue claims against HPD and requesting another chance to add claims against the individual officers involved in his arrest.[42] The court granted Plaintiff's oral motion and set a deadline of one week to file the second amended complaint.[43] On the due date, rather than file an amended complaint that complied with his oral representations, Plaintiff filed a "Second Motion for Leave to Amend the Complaint," in which he stated that he sought amendment to add four named officers involved in his criminal case as well as unnamed policymakers of HPD and Houston.[44]

In the proposed second amended complaint filed as an attachment to his motion for leave, Plaintiff added as defendants Officers Orellana, LaFountain, Lundy, and Francis, as well as Chief Acevedo and Mayor Turner.[45] Contrary to his representation to the

---

[41]   See id. pp. 11-14.

[42]   See Doc. 22, Min. Entry Ord. Dated Oct. 17, 2019; Audio of Hr'g Dated Oct. 17, 2019.

[43]   See Doc. 22, Min. Entry Ord. Dated Oct. 17, 2019.

[44]   See Doc. 23, Pl.'s 2$^d$ Mot. for Leave to Am. p. 1.

[45]   See Doc. 23-2, Attach. 2 to Pl.'s 2$^d$ Mot. for Leave to Am., Pl.'s 2$^d$ Am. Compl. pp. 1-3.

8

court, Plaintiff did not drop HPD as a defendant.[46]   Plaintiff
continued to refer to the officers collectively throughout his
factual account without specifically attributing any actions to the
newly added individual defendants.[47]   In fact, except for the
addition of the individual defendants, his complaint remained the
same as his first amendment.[48]  On November 4, 2019, regardless of
having filed a second amended complaint, Plaintiff timely filed a
response to HPD and Houston's pending motion to dismiss his first
amended complaint.[49]   Two weeks later, the court terminated
Plaintiff's second motion for leave to amend as moot on the basis
that the court already granted leave to amend at the October
scheduling conference.[50]

        At a status conference on February 4, 2020, however, the
court reversed its prior ruling that had granted Plaintiff leave to
file a second amended complaint and further clarified that HPD and
Houston's second motion to dismiss remained pending against
Plaintiff's first amended complaint, which was the live pleading.[51]

---

[46]     See id.

[47]     See id. pp. 4-7.

[48]     Compare Doc. 19, Pl.'s 1st Am. Compl. with Doc. 23-2, Attach. 2 to
Pl.'s 2d Mot. for Leave to Am., Pl.'s 2d Am. Compl.

[49]     See Doc. 25, Pl.'s Resp. to HPD & Houston's Mot. to Dismiss Pl.'s 1st
Am. Compl.

[50]     See Doc. Entry Dated Nov. 18, 2019.

[51]     See Doc. 27, Min. Entry Ord. Dated Feb. 4, 2020; Audio of Hr'g Dated
Feb. 4, 2020.

The court set dates for the litigation, including March 5, 2020, as the deadline for amendments to pleadings.[52]

On that deadline, Plaintiff filed a third motion for leave to amend his complaint, citing a need to name Officer Francis as a defendant.[53]  The attached proposed complaint was, in fact, a complete makeover of prior complaints.[54]  Plaintiff narrowed the list of defendants to only Houston and Officer Francis.[55]  In the section on background facts, Plaintiff added facts and allegations, of particular relevance, facts attributing certain actions to Officer Francis and allegations of customs in practice at HPD.[56]

While retaining the prior allegations that Plaintiff's "constitutional rights to be free from unfounded arrest and bad faith prosecution[]" had been violated, Plaintiff expanded his legal and factual bases for the claims.[57]  Specifically, Plaintiff alleged that Officer Francis "put together an arrest warrant and had other officers arrest Plaintiff without probable cause[]" and

---

[52]    See id.

[53]    See Doc. 30, Pl.'s 3rd Mot. for Leave to Am.

[54]    Compare Doc. 30-1, Attach. 1 to Pl.'s 3rd Mot. for Leave to Am., Pl.'s 3rd Am. Compl. with Doc. 1, Pl.'s Orig. Compl.; Doc. 19, Pl.'s 1st Am. Compl.; Doc. 23-2, Attach. 2 to Pl.'s 2d Mot. for Leave to Am., Pl.'s 2d Am. Compl.

[55]    See Doc. 30-1, Attach. 1 to Pl.'s 3rd Mot. for Leave to Am., Pl.'s 3rd Am. Compl. pp. 1-2.

[56]    See Doc. 30-1, Attach. 1 to Pl.'s 3rd Mot. for Leave to Am., Pl.'s 3rd Am. Compl. pp. 1-10.

[57]    Id. p. 13; see also pp. 10-14.

that Officer Francis conducted "no meaningful investigation[.]"[58] Plaintiff's particular focus was on the failure to conduct a lineup, relying instead "upon the uncorroborated and unverified hearsay testimony of a suspect in a brutal gang rape investigation."[59]

In the fact section, Plaintiff also suggested a violation of his right to equal protection by alleging that HPD had "a historical custom of engaging in investigatory tactics and police procedures that unduly target racial minorities[,]" that he was deprived of his "guarantee of equal protection[,]" that he was "charged—almost solely—on the basis of his ethnic or ethnic-sounding nickname[,]" and that his arrest was racist.[60]   Although Plaintiff did not specifically allege an equal-protection violation in his statement of claims, he did allege that Houston engaged in certain customs, including "criminally prosecuting innocent persons, at least in part, on the basis of their ethnic heritage" resulting in the suffering of "[s]cores of other innocent African-American men."[61]

On the topic of a municipal policy or custom, Plaintiff employed a scattershot approach that ran the gamut from the

---

[58]    Id. p. 14.

[59]    Id. p. 15.

[60]    Id. pp. 3-4, 8.

[61]    Id. pp. 11-12.

practices of failing to conduct meaningful investigations and failing to use lineups to written procedures perpetuating unconstitutional practices to the failure to train, supervise, and discipline the officers involved.[62]

After moving for and being granted an extension of time to respond to Plaintiff's third motion to amend, Houston filed a response opposing leave to amend arguing that the amendment, including the allegations against Officer Francis, would be futile.[63]  The response incorporated the pending motion to dismiss Plaintiff's first amended complaint.

## II.  Plaintiff's Motion for Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) applies in this instance and requires that the party seeking to amend its pleading secure the "opposing party's written consent or the court's leave." "The court should freely give leave when justice so requires." Id. The decision whether to grant a motion to amend is within the court's discretion.  Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n, 751 F.3d 368, 378 (5th Cir. 2014).  Leave to amend is by no means automatic, but the court does need to have a substantial reason to support a denial.  Id. (quoting Jones v. Robinson Prop. Grp., L.P., 427 F.3d 987, 994 (5th Cir. 2005)).  The

---

[62]    See id. pp. 11-12, 14-15.

[63]    See Doc. 31, Houston's Unopposed Mot. for Extension of Time to Respond to Pl.'s 3rd Mot. for Leave to Am.; Doc. 32, Order Dated Mar. 24, 2020; Doc. 33, Houston's Resp. to Pl.'s 3rd Mot. for Leave to Am.

factors that the court may consider in making its decision include undue delay, bad faith or dilatory motive, repeated failure to correct deficiencies in amendments previously allowed, undue prejudice to the nonmoving party, and futility of the amendment. Id. (quoting Jones, 427 F.3d at 994).

The court's deadline for amendment of the pleadings was March 5, 2020, the date on which Plaintiff filed the pending motion for leave to amend.  Plaintiff attempted more than once to correct deficiencies in his complaint.  On this, his third proposed amendment, Plaintiff attempted the most sweeping changes to his complaint.  While not perfect by any means, the proposed complaint provides relevant factual detail missing from all prior complaints, offers more explanation of the alleged municipal policies and customs, and eliminates HPD as a defendant.  The motion for leave was timely filed, the proposed complaint presents a better statement of the facts and claims, and the court lacks a substantial reason to deny leave.  Accordingly, the court, in its discretion, finds it proper to allow Plaintiff leave to amend. Plaintiff's Third Amended Complaint is the live pleading in this action.

### III.  Motion to Dismiss

Houston filed an opposition to Plaintiff's third motion for leave to amend that presented futility arguments on behalf of itself and Officer Francis and that incorporated the pending second

motion to dismiss.  The standard for determining whether an amendment would be futile is the same as that for deciding whether a complaint should be dismissed.  <u>See</u> <u>N. Cypress Med. Ctr. Operating Co. v. Aetna Life Ins. Co.</u>, 898 F.3d 461, 478 (5th Cir. 2018)(quoting <u>Marucci Sports, L.L.C.</u>, 751 F.3d at 378)(stating that an amendment is futile if it would not survive a motion to dismiss).

In this case, the reasons presented in support of futility and dismissal overlap on the following issues: (1) failure to allege a violation of any constitutional right;[64] and (2) failure to allege a municipal policy or custom that caused any constitutional violation.[65]  Therefore, the court may consider arguments raised in both the motion and the response in deciding whether Plaintiff's Third Amended Complaint should be dismissed.

Even though Plaintiff did not seize the opportunity to reply to the response in opposition to his motion for leave to amend, he did file a response to the pending motion to dismiss and has known of the particular challenges to his pleading for eight months since the filing of the first motion to dismiss.  Moreover, Plaintiff has

---

[64]    The court notes that both the second motion to dismiss and the response to the pending motion for leave to amend specifically address the allegations of false arrest, malicious prosecution, and racial inequality.

[65]    In the opposition to the motion for leave to amend, Houston raises a new argument that Officer Francis is entitled to qualified immunity.  Because the court finds that Plaintiff failed to state a constitutional violation as explained herein, it is not necessary to reach the immunity issue.  That said, the court notes that the failure to state a constitutional violation is a requirement to overcome the assertion of qualified immunity.  <u>See</u> <u>Morgan v. Swanson</u>, 659 F.3d 359, 371 (5th Cir. 2011).

attempted to avoid dismissal multiple times by way of amendment and, as a result, has had ample opportunity to present the best statement of his claims.   Herein, the court engages in a full evaluation of the merits of dismissal of Plaintiff's case.

## A.   Dismissal Standard

Rule 12(b)(6) allows dismissal of an action whenever the complaint, on its face, fails to state a claim upon which relief can be granted.   The court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts.   Shaw v. Villanueva, 918 F.3d 414, 416 (5th Cir. 2019)(quoting Heaney v. U.S. Veterans Admin., 756 F.2d 1215, 1217 (5th Cir. 1985)).   A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level."   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).   Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Iqbal, 556 U.S. 678.   A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."   Twombly, 550 U.S. at 555.   In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully."   Iqbal, 556 U.S. 678.

15

**B.   Discussion**

In order to prevail on a claim under Section 1983,[66] a plaintiff must establish that the defendant deprived the plaintiff of her federal constitutional or statutory rights while acting under the color of state law. Moody v. Farrell, 868 F.3d 348, 351 (5th Cir. 2017). The statute creates no substantive rights but only provides remedies for deprivations of rights created under federal law. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

Houston argues that Plaintiff's Section 1983 claim should be dismissed for several reasons. The court finds determinative Plaintiff's failure to identify any federal constitutional or statutory right that was violated by any HPD officer. In reaching that conclusion, the court considers whether Plaintiff has stated a claim with regard to violations of the following alleged constitutional rights: (1) freedom from false arrest; (2) freedom from malicious prosecution; and (3) equal protection.

**1.   False Arrest**

The Fourth Amendment, applied to state actors through the Fourteenth Amendment, protects "[t]he right of the people to be

---

[66]    The provision reads, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A warranted arrest may be challenged as lacking probable cause if the officer made "a false statement knowingly and intentionally, or with reckless disregard for the truth," which causes the issuance of a warrant without probable cause. Michalik v. Hermann, 422 F.3d 252, 258 n.5 (5th Cir. 2005)(quoting Franks v. Delaware, 438 U.S. 154, 155-56 (1978)).

Addionally, "A grand-jury indictment establishes probable cause." Trois v. Long, 362 F. App'x 399, 401 (5th Cir. 2010)(unpublished)(citing Gerstein v. Pugh, 420 U.S. 103, 117 n.19 (1975)). When a grand jury has returned an indictment based on the facts supporting the arrest, that independent decision "breaks the causal chain and insulates the initiating party," even where the initiating party acted with malice. Hand v. Gary, 838 F.2d 1420, 1427 (5th Cir. 1988)(internal quotation marks omitted)(quoting Smith v. Gonzales, 670 F.2d 522, 526 (5th Cir. 1982)). The Fifth Circuit conditions the break in causation on a full presentation of the facts to the intermediary:

> [T]he chain of causation is broken only where all the facts are presented to the grand jury, where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information or other independent intermediary from the independent intermediary. Any misdirection of the magistrate or the grand jury by omission or commission perpetuates the taint of the original official behavior.

Id. at 1427-28. In other words, a plaintiff challenging probable

cause must allege that the deliberations of the intermediary were tainted by the actions of the defendant.  See id. at 1428.

In this case, Plaintiff's false arrest claim is based on the alleged absence of probable cause resulting from a poor investigation.  Plaintiff's arrest was pursuant to a warrant issued by a magistrate judge after determining that probable cause existed.  Plaintiff vaguely alleged that Officer Francis provided false information to obtain the arrest warrant, stating that she obtained the warrant based on "unattributed hearsay from the mouth of a suspect and on false information never verified with the complainant."[67]  The court understands this vague accusation to refer to Officer Francis's reliance on Thompson-John's identifying someone named Chidera as a suspect in procuring the warrant for Plaintiff's arrest.  However, as is evident from Plaintiff's complaint as a whole, Plaintiff contends that Officer Francis failed to independently verify that Thompson-John was referring to Plaintiff, not that Officer Francis lied under oath about the information obtained from Thompson-John.  In other words, Plaintiff failed to allege that Officer Francis knowingly and intentionally made any false statement in procuring the warrant, and nothing in the complaint suggests that Officer Francis falsified any information.

Additionally, a grand jury indicted Plaintiff.  Plaintiff did

---

[67]    Doc. 30-1, Attach. 1 to Pl.'s 3rd Mot. for Leave to Am., Pl.'s 3rd Am. Compl. pp. 7-8.

not allege that the grand jury was not privy to all of the facts or that Officer Francis's malicious motive led to the withholding of any relevant information.  Thus, the indictment broke the chain of causation and insulated Officer Francis from liability.

### 2.  Malicious Prosecution

The Fifth Circuit does not recognize an independent federal cause of action for malicious prosecution.  Deville v. Marcantel, 567 F.3d 156, 169 (5th Cir. 2009)(citing Castellano v. Fragozo, 352 F.3d 939, 945 (5th Cir. 2003)).  Rather, violations of specific constitutional rights occurring in relation to a "malicious prosecution" can be redressed pursuant to those individual constitutional protections and not under the broad category of malicious prosecution.  Id. at 169.  The basis for Plaintiff's claim of malicious prosecution evidently is the allegation that his arrest was without probable cause.  Thus, it is covered by the constitutional proscription against false arrest discussed above.

### 3.  Equal Protection

In order to state a claim under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff first must allege "that two or more classifications of similarly situated persons were treated differently" by a state actor.  Gallegos-Hernandez v. United States, 688 F.3d 190, 195 (5th Cir. 2012).  If successful, the court determines the appropriate level of scrutiny for the classification made.  Id.

19

Plaintiff's complaint offered nothing more than conclusory allegations that the arrest was racially motivated.  He admitted that the perpetrators of the crime for which he was arrested were black.  He did not allege any facts to support an inference that any person of another classification was treated differently than he was under similar circumstances.  Plaintiff's conclusory assertion that he was denied equal protection does not even reach the speculative level of a right to relief, much less surpass it.

The evidence does not support a claim for the violation of any alleged constitutional right by Officer Francis or any other HPD officer.  Therefore, all claims against Officer Francis should be dismissed.  The claims against Houston also cannot stand in the absence of a constitutional violation, notwithstanding the allegations regarding municipal policies.

## IV.  Conclusion

Based on the foregoing, the court **GRANTS** Plaintiff's motion for leave to amend and **RECOMMENDS** that the motion to dismiss be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual

findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 21st day of April, 2020.

Nancy K. Johnson
United States Magistrate Judge

21